UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


**ROCKHILL INSURANCE COMPANY,**

    **Plaintiff,**

v.                                         **Case No. 3:09cv556/MCR/EMT**

**COYOTE LAND COMPANY, INC., et al.,**

    **Defendants**.
_____/


## ORDER

Plaintiff Rockhill Insurance Company ("Rockhill") has filed a motion for summary judgment in this declaratory judgment suit (doc. 40), and no response has been filed. The court has fully considered the record and the plaintiff's arguments, and concludes that summary judgment is appropriate.

**Background**

This a declaratory judgment action against Defendant Coyote Land Company, Inc. ("Coyote") and various Florida residents ("the *Crawford-Lynch* Plaintiffs"), in which the plaintiff, Rockhill, seeks a declaration that it has no duty to defend or indemnify Coyote in connection with an underlying lawsuit that the *Crawford-Lynch* Plaintiffs filed in state court against Coyote.[1] *See* 28 U.S.C. § 2201. In brief, Coyote owns a landfill in Navarre, Florida; the *Crawford-Lynch* Plaintiffs sued Coyote for injuries and damages relating to the emanation of hydrogen sulfide gas from the landfill; and Rockhill, which issued an

---

[1] The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy is alleged to exceed $75,000; Rockhill is an Arizona corporation with its principal place of business in Missouri, Coyote is a Florida corporation doing business in Navarre, Florida, and all other defendants are Florida residents.

Case No. 3:09cv556/MCR/EMT

insurance policy to Coyote in effect from August 2009 through August 2010, represents in the Redacted Petition for Declaratory Relief (doc. 2) that it is currently defending Coyote in the state-court suit under a reservation of rights and seeks in this suit a determination that it owes Coyote no duty to defend or indemnify under the policy due to specific policy exclusions.[2] Because no defendant has filed a response to Rockhill's summary judgment motion, including no statement of material facts in dispute, the court will consider the facts as stated by Rockhill as undisputed for purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2); N.D. Fla. Loc. R. 56.1(A).

The undisputed facts include the following.[3] In a previous state court law suit against Coyote, filed on August 21, 2006, numerous property owners and residents of Santa Rosa County, Florida, (the "*Antenberg* Plaintiffs") sued Coyote for negligence, private nuisance, trespass and injunctive relief. The *Antenberg* Plaintiffs alleged that Coyote's negligent operation of its landfill, the Coyote-Navarre Construction and Demolition Debris Disposal Facility (the "Coyote-Navarre Landfill"), was causing off-site air, groundwater, soil and odor pollution and resulting damages; specifically, the allegations included injury from exposure to excessive levels of hydrogen sulfide and objectionable odors. The *Antenberg* Plaintiffs presented evidence such as notices of violations of environmental regulations issued since December 2002 to Coyote by the Florida Department of Environmental Protection ("FDEP") and continued and repeated citizen complaints beginning around March 2005, when the Coyote-Navarre Landfill began open burning of solid waste. Coyote's insurer at the time

---

[2] The court has been notified by the attorney for the *Crawford-Lynch* Plaintiffs, who are named defendants in this lawsuit, that the state-court suit settled in November 2010. Therefore, no live controversy remains regarding these defendants and they will be dismissed for lack of subject matter jurisdiction. Nonetheless, Rockhill has pursued its motion for summary judgment against Coyote and recently filed a supplemental brief in support of the motion for summary judgment (doc. 45). Rockhill retains a live interest in having its obligations under the policy determined because it provided a defense to Coyote in the underlying lawsuit under a reservation of rights, and Rockhill would be entitled to recoup the costs of that defense upon a legal determination that it had no duty to defend or indemnify. *See generally Colony Ins. Co. v. G & E Tires & Servs., Inc.*, 777 So. 2d 1034 (Fla. 1st DCA 2000). Therefore, the court retains jurisdiction over this controversy.

[3] Because Rockhill's statement of undisputed material facts (doc. 41) has not been challenged, the court incorporates it here by reference in its totality, and provides only a summary in this order.

Case No. 3:09cv556/MCR/EMT

(which was a different company, not Rockhill), provided Coyote a defense to the *Antenberg* suit and ultimately paid funds on Coyote's behalf to settle that lawsuit.

On or about September 30, 2009, the *Crawford-Lynch* Plaintiffs, also named here as defendants, filed a state-court civil action against Coyote for negligence, private nuisance, negligence per se, wanton misconduct, and negligent failure to warn, arising out of the alleged release of hydrogen sulfide at the landfill in Navarre.[4] Like the complaint brought by the *Antenberg* Plaintiffs, the underlying *Crawford-Lynch* complaint alleges that the *Crawford-Lynch* Plaintiffs suffered injuries from excessive levels of hydrogen sulphide, which is a hazardous air pollutant, and its objectionable odors. Adverse health effects alleged include respiratory illness, nosebleeds, nausea, eye irritation, sinus irritation, congestion, headaches, and insomnia. In the underlying complaint, the *Crawford-Lynch* Plaintiffs chronicled the same history of problems as were outlined in the *Antenberg* action (including notices of environmental regulation violations since December 2002), and the complaint states that the *Crawford-Lynch* Plaintiffs had complained of objectionable odors since October 2005. Rockhill provided a defense to Coyote in the underlying *Crawford-Lynch* lawsuit under a reservation of rights.

On August 31, 2009, one month before the *Crawford-Lynch* action was filed, Rockhill renewed a commercial general liability and site specific pollution liability policy to Coyote (Policy No. R PKG E 000330-01), effective from August 31, 2009, through August 31, 2010. (*See generally* docs. 41-13; 41-14; 41-15, the insurance policy at issue.) The policy includes a Total Pollution Exclusion Endorsement, stating that this insurance does not apply to bodily injury or property damage that "would not have occurred but for the discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (Doc. 41-14, at 11.) The term "pollutants" is defined in the policy to mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot fumes, acids, and other chemicals and waste. However, the policy also includes site specific pollution liability

---

[4] The underlying state court action is titled *Crawford-Lynch, et al. v. Coyote Land Co., Inc.*, No. 572009CA001744CAXXXX (Circuit Court in and for Santa Rosa County, Florida).

Case No. 3:09cv556/MCR/EMT

coverage, providing "claims-made" coverage. (Doc. 41-15.) The site specific coverage excludes coverage for prior or pending claims, that is, incidents "[t]hat any insured, prior to the beginning of the policy period for this insurance, should have reasonably foreseen may give rise to a claim" or "[f]or which notice of a claim or occurrence has been provided to any insurer prior to the beginning of the policy period for this insurance." (Doc. 41-15, at 9.)

Rockhill moves for summary judgment on the grounds that it has no duty to defend or indemnify Coyote in connection with the underlying lawsuit because coverage is barred by one or more of the above-referenced exclusions.

**Discussion**

The plain language of Rule 56(a) requires the court to grant summary judgment "if the moving party shows that there is no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting the rule mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The moving party bears the initial burden of proof to set forth the basis for its motion, identifying facts as to which there is no genuine dispute. *Celotex*, 477 U.S. at 323. The mere failure of the nonmoving party to create a factual dispute does not itself authorize the entry of summary judgment; the moving party must establish the absence of a material dispute of fact. *See Dixie Stevedores, Inc. v. Marinic Maritime, Ltd.*, 778 F.2d 670, 673 (11th Cir. 1985). However, when a party fails to respond to the opposing parties' assertion of fact, the court may "consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the moving party is entitled to it." Fed. R. Civ. P. 65(e)(2), (3). This language dictates that even when the nonmoving party fails to respond, summary judgment should be granted only on a determination by the court that the record supports judgment in favor of the moving party. *See generally, L.S.T., Inc. v. Crow*, 49

F.3d 679, 684 n.9 (11th Cir. 1995); *Dixie Stevedores*, 778 F.2d at 673 (citing *John v. State of Louisiana*, 757 F.2d 698, 709-10 (5th Cir. 1985)). "Where the record taken as a whole could not lead a rational trier of fact to find for the noon-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal marks omitted).

In this declaratory judgment action brought on the basis of diversity jurisdiction, the law of the forum, i.e., Florida, governs the substantive issues, unless federal law compels a different result. *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F.3d 1143, 1148 (11th Cir. 2010); *Technical Coating Applicators, Inc. v .U.S. Fidelity and Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998). Under Florida law, an insurer's duty to defend is broader than its duty to indemnify and is determined by the allegations of the complaint if suit has been filed. *Mid-Continent Cas. Co.*, 601 F.3d at 1148; *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 & n.2 (Fla. 2004); *see also MCO Environmental Inc. v. Agricultural Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1115 (Fla. 3d DCA 1997) ("If the complaint alleges facts that could bring the insured partially within coverage of the policy, the insurer is obligated to defend the entire suit."). "However, if the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend." *Keen v. Fla. Sheriffs' Self-Insurance*, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007). Additionally, the insurer does not breach its duty to defend by providing a defense under a reservation of rights and then challenging coverage. *Mid-Continent Cas. Co.*, 601 F.3d at 1148.

The construction of an insurance policy is a matter of law for the court, *see Barnier v. Rainey*, 890 So. 2d 357 (Fla. 1st DCA 2004), and the policy must be construed according to the plain language of the policy as bargained for by the parties, *see Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Here, the language of the policy consisting of an absolute pollution exclusion has previously been considered by the Supreme Court of Florida and found to be clear and unambiguous. *See Technical Coating Applicators*, 157 F.3d at 845 (citing and discussing *Deni Assocs. of Fla. Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998)). The undisputed facts establish that hydrogen sulfide

is a hazardous air pollutant known to cause, or which reasonably may be anticipated to cause death, injury or serious adverse effects on human health or the environment. It is a colorless gas that can cause symptoms such as burning eyes, headaches, nausea, fatigue, and respiratory issues, and therefore, it is a gaseous contaminant and pollutant within the meaning of the policy. Therefore, the policy's total pollution exclusion in the commercial general liability coverage part of the policy bars coverage for the claims in the underlying lawsuit.

Additionally, the site specific pollution liability coverage excludes coverage for prior and pending claims, and no ambiguity has been identified. This is a "claims-made" policy under which coverage applies only to those claims first made during the policy period. *See HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1315 (11th Cir. 2008). As to earlier claims made or occurrences noticed earlier which the insured should have reasonably foreseen would result in a claim "prior to the beginning of the policy period," coverage is explicitly excluded. Here, the complaint in the underlying lawsuit notes that the prior *Antenberg* lawsuit, which dealt with the very same pollution condition as this claim, was filed against Coyote in 2006, giving Coyote clear notice and foreseeability of the claim prior to the beginning of this policy period, which was August 31, 2009.[5]

Finally, Rockhill argues that Coyote's affirmative defenses should be rejected as a matter of law. The court agrees, for the reasons stated by Rockhill (*see* doc. 40), but finds it unnecessary to detail them in this order.[6] Rockhill, the moving party, has identified evidence demonstrating the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Coyote has come forth

---

[5] The site specific declarations page provides in Item 2 that the beginning of the policy period, August 31, 2009, will be deleted and replaced if completed, but Item 2 is not completed with a new "beginning of the policy period" date; therefore, the policy beginning date has not been altered for purposes of the site specific coverage. The retroactive date provided for this site in Endorsement A, September 1, 2001, is the date governing how far back the policy coverage reaches *if* a valid claim is made within the relevant policy period.

[6] Coyote's Answer lists nine affirmative defenses but it pursued none of them in opposition to the motion for summary judgment, and therefore the court deemed the facts stated by Rockhill as undisputed. None of the affirmative defenses listed in the Answer, without some dispute of fact identified, is sufficient to preclude summary judgment for plaintiff.

Case No. 3:09cv556/MCR/EMT

with no evidence to avoid the entry of summary judgment and cannot rely on pleadings alone to meet this burden. *See Celotex Corp.*, 477 U.S. at 322; *RSUI Indem. Co. v. Benderson Dev. Co.*, No. 2:09cv88, 2011 WL 32318, at *1 (M.D. Fla. 2011). After viewing record, the court sees no undisputed evidence from which reasonable minds might draw differing inferences to create a question of fact. *See St. Charles Foods, Inc. v. America's Favorite Chicken*, 198 F.3d 815, 819 (11th Cir. 1999) (noting the court should deny summary judgment "if reasonable minds might differ on the inferences arising from undisputed facts" (internal marks omitted)); *RSUI Indem. Co.*, 2011 WL 32318, at *1. Rockhill owed no duty to defend or indemnify under this policy because where, as here, "the pleadings show the clear applicability of a policy exclusion, the insurer has no duty to defend." *Keen*, 962 So. 2d at 1024 ("A liability insurance carrier must defend the insured *only* when the initial pleadings fairly bring the case within the scope of coverage." (internal marks omitted)).

Accordingly, it is hereby ORDERED that Plaintiff's motion for summary judgment (doc. 40) is **GRANTED**. The clerk shall enter final summary judgment in favor of Plaintiff Rockhill Insurance Company and against Defendant Coyote Land Company, Inc., with costs taxed against Coyote Land Company, Inc. All other defendants are **DISMISSED** for lack of subject matter jurisdiction.

**DONE AND ORDERED** this 4th day of February, 2011.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**